MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Apple Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re APPLE INC.; APPLE RETAIL GERMANY GMBH; and APPLE SALES INTERNATIONAL,<br><br>　　Applicants,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Qualcomm Incorporated for Use in Foreign Proceedings | Civil Case No.: 3:12-cv-00147-LAB-POR<br><br>**OPPOSITION OF APPLE INC. TO MOTOROLA MOBILITY INC.'S EX PARTE MOTION TO QUASH 1782 SUBPOENA** |

## I. INTRODUCTION

Motorola Mobility, Inc. seeks to prevent Apple Inc. from obtaining indisputably relevant discovery from Qualcomm Inc. on the ground that the German court to which Apple intends to submit the discovery lacks adequate procedures for protecting its confidentiality. The discovery Apple seeks from Qualcomm is vital to Apple's defense against Motorola's allegations in Germany. In particular, Apple seeks to disclose to the German court documents showing that Apple has a complete defense to certain patent infringement claims by Motorola because Motorola has already entered into license agreements with Qualcomm, one of Apple's suppliers. Motorola's motion to quash is nothing more than a tactical maneuver designed to prevent this fact from being established in Germany, and as such, should be denied.

First, Motorola understates the significant confidentiality protections provided by the German court, and further ignores the additional steps that Apple has taken and is willing to take to prevent the public disclosure of confidential information in Germany. In fact, the parties have already successfully navigated the use of confidential materials in the German proceedings without harm to either party.

Second, granting Motorola's motion to quash would unfairly prejudice Apple because Motorola has already submitted in Germany certain of its own confidential information about its licensing practices, and information about its confidential negotiations with Apple, when it believed that doing so would be favorable to its claims. Motorola chose Germany as a forum, and prior to the filing of this motion to quash has not shown significant concern regarding the level of protection afforded to confidential information by the German courts. Indeed, Apple has sought for over five months to formalize an agreement between the parties regarding the treatment of confidential information in Germany, and Motorola steadfastly stonewalled this effort, refusing to respond to any of Apple's proposals or to offer a proposal of its own. Given this history – with Apple attempting for months to secure an agreement on confidentiality restrictions in Germany and Motorola refusing to do so – Motorola's motion to quash is grossly disingenuous.

Finally, Motorola's arguments that Apple has improperly pursued its application for discovery under 28 U.S.C. § 1782 are unfounded. Section 1782 is an *ex parte* process to allow

1

1   discovery *to be taken*, and does not require notice to potentially affected parties. Nevertheless,
2   Apple in this case *did provide notice* to Motorola's lead trial counsel concurrently with the filing
3   of its application more than a week before Apple's application was granted. Further, Apple filed
4   its Section 1782 application in this district because Qualcomm's principal place of business is in
5   San Diego and provided more than adequate factual support in its application. Motorola's motion
6   to quash Apple's subpoena of Qualcomm should therefore be denied.

7   **II.    BACKGROUND**

8   Motorola has filed several patent infringement lawsuits against Apple in district courts in
9   the United States, and in courts in Germany. Haskett Decl., ¶ 2. In Germany, Motorola alleges
10  that Apple's iPhone and iPad products infringe patents that, according to Motorola, cover devices
11  operating on cellular networks. Haskett Decl., ¶ 3.

12  The allegedly infringing functions of Apple's iPhone and iPad are performed within a
13  particular type of chip (known as a baseband processor) supplied by other companies. For the
14  iPhone 4S, Qualcomm supplies the relevant chip for incorporation into the product. As
15  documented in detail in the materials that Apple seeks in discovery from Qualcomm, Motorola
16  and Qualcomm have entered into license agreements that provide Apple with a complete defense
17  to certain of Motorola's infringement claims. Apple wishes to submit the materials that are the
18  subject of its subpoena to Qualcomm in order to establish this fact in the German proceedings.
19  Haskett Decl., ¶ 7.

20  To that end, Apple filed an Application in this Court to take discovery for use in a foreign
21  proceeding, under 28 U.S.C. § 1782, on January 17, 2012. Very early on January 18, 2012, just
22  12 hours after Apple filed its Application, Apple sent a copy of its Application, with the proposed
23  subpoena to Qualcomm attached, by e-mail to lead counsel for Motorola, Charles Verhoeven.
24  Haskett Decl., ¶ 4, *id.*, Ex. 1. According to Motorola, Mr. Verhoeven did not transmit Apple's
25  filing to his client. Haskett Decl., Ex. 2. Between January 18 and January 26, 2012, neither
26  Motorola nor its counsel made any objection to the Application, nor to the subpoena directed to
27  Qualcomm. *Id.*, ¶ 5.
28

1  This Court granted Apple's Application on January 25, 2012, and Apple served the
2  subpoena on Qualcomm later the same day. Haskett Decl., ¶ 6. On January 26, 2012, Qualcomm
3  told Apple that it was willing to provide Apple's U.S. and German outside counsel with copies of
4  the license agreements between Qualcomm and Motorola, so that Apple could submit those
5  agreements to the German court. Haskett Decl., ¶ 7. Late in the day on January 26, however,
6  Motorola indicated for the first time that it objected to Qualcomm's production of the agreements,
7  and on January 27, filed its motion to quash. Haskett Decl., ¶ 8; *id*., Ex. 2.

### III. MOTOROLA HAS NO REASONABLE BASIS TO OBJECT TO PRODUCTION OF THE MOTOROLA-QUALCOMM LICENSES AND CORRESPONDENCE

#### A. Motorola Overstates the Risk of Disclosure.

Motorola cannot credibly argue that confidential material produced by Qualcomm will receive no protection if submitted in the German litigation. Motorola does not dispute that under German law, "court files are generally not public." Grosch Decl., ¶ 3. To the extent that the Qualcomm materials are incorporated into briefs or other written submissions to the German court, they will not be disclosed to the public absent special circumstances.

Rather, Motorola argues that the protections provided by the German courts are inadequate because there are two exceptions to the rule of confidentiality. The first is that confidential materials may become public when they are actually discussed in a hearing attended by individuals who are not parties. Grosch Decl., ¶¶ 3–6. The second is that confidential material may become available to additional parties that join the proceedings by intervening. Grosch Decl., ¶¶ 7–9. Neither exception is likely to result in significant disclosure of sensitive material in this case.

First, Motorola does not dispute that hearings can be closed to the public when "confidential information or trade secrets would be addressed and the public discussion of this information would negatively impact the proprietor of such information." Grosch Decl., ¶ 5. Apple has consistently communicated to Motorola that it is willing to request that hearings involving sensitive information be closed. *See, e.g.*, Haskett Decl., Ex. 3 (letter from Christine

1  Haskett to Stephen Swedlow).  Consistent with its past practice, Apple will request closure of the
2  courtroom during discussion of materials produced by Qualcomm pursuant to Apple's subpoena.
3        Second, Apple presently seeks to admit the materials to be produced by Qualcomm for a
4  limited purpose—to establish that Motorola and Qualcomm have entered into license agreements
5  covering components incorporated into Apple products.  To the extent that there are "terms of
6  those agreements, including royalty and other highly confidential licensing terms" that are not
7  relevant to Apple's arguments, they can be redacted from the copies of the agreements submitted
8  to the German court and discussed in hearings, and Apple has proposed this precaution to
9  Motorola.  *See* Haskett Decl. ¶ 13, Ex. 3 (letter from Christine Haskett to Stephen Swedlow).  By
10  submitting redacted copies of Qualcomm's documents, the parties can also avoid what Motorola
11  argues is the second risk—disclosure of confidential material to parties that intervene.
12        Third, Apple has also agreed that in-house counsel and other party representatives should
13  not have access to confidential material and should leave the courtroom during the presentation of
14  that material.  Haskett Decl. ¶ 13, Ex. 4 (October 17, 2011 Letter from Bardehle to Quinn), Ex. 3
15  (letter from Christine Haskett to Stephen Swedlow).  The parties can abide by that agreement
16  regardless of whether the Court orders the courtroom closed to the public in general.
17        Fourth, in the course of the German proceedings, the parties have already proceeded
18  through several hearings involving sensitive topics, such as Motorola's licensing practices and
19  confidential licensing negotiations between Apple and Motorola, without complaint from
20  Motorola.  For example, on October 21, 2011, the parties participated in a hearing regarding
21  whether Apple had already made a reasonable license offer to Motorola.  Prior to the hearing,
22  Motorola submitted details of its licensing practices, and of the confidential negotiating history
23  between Apple and Motorola, in a brief to the German court.  Haskett Decl., ¶ 11.  For this
24  reason, before the hearing Apple's German counsel proposed to Motorola's German counsel that
25  the parties consent to the closing of the courtroom during the discussion of Motorola licenses.
26  *Id.*, Ex. 4 (October 17, 2011 letter from Christof Karl).  Motorola failed to respond to this
27  proposal.
28

In sum, the German court provides adequate protection for confidential information through its default rule of the confidentiality of submissions, and the parties have demonstrated previously the ability to address confidentiality issues within the framework of German law. Motorola's newfound professed concern about the confidentiality of its licenses is unfounded and inconsistent with its past conduct in the German litigation between the parties.

### B. Motorola Has Rebuffed Numerous Prior Attempts by Apple to Enter Into Confidentiality Agreements Applicable to the German Litigation.

Motorola's current position—that the German court does not offer adequate protection for confidential information—also rings hollow in light of its persistent unwillingness to agree with Apple on the terms of a confidentiality agreement applicable to the German litigation.

Motorola has submitted confidential information—both its own, and that of Apple—to the German court without ever raising the concerns stated in its motion to quash. Specifically, Motorola disclosed confidential details of Apple-Motorola license negotiations, as well as confidential details of licenses Motorola has granted to other companies, in its submissions to the German court, notwithstanding the fact that the information would have been filed under seal in litigation in the United States. Haskett Decl., ¶ 12. Motorola disclosed the confidential information in support of its argument that its licensing offers to Apple were reasonable. *Id*. Motorola cannot reasonably complain that the German courts do not offer sufficient protection for the confidential details of its license negotiations and terms when it has submitted that very information in support of its own case.

Motorola's previous lack of concern regarding the level of protection provided in the German court is also evident from its previous failure to negotiate additional protections with Apple. Apple has sought for over five months to reach agreement with Motorola regarding the proper mechanism for using confidential information in the German proceedings, and has to date not received meaningful responses or counterproposals from Motorola. Haskett Decl., ¶ 13. In August 2011, counsel for Apple contacted counsel for Motorola in order to negotiate an agreement to provide protection for confidential information in the German proceedings. Haskett Decl. ¶ 13; *id*., Ex. 5. Despite repeated emails and telephone calls requesting Motorola's position

1  on such an agreement, Motorola's only response was to note that the agreement would need to
2  provide adequate protections for third parties. *Id.* On October 17, 2011, Apple proposed in a
3  letter to Motorola that the parties handle the presentation of confidential information in German
4  court by jointly requesting that the court close the courtroom, and by agreeing that in-house
5  counsel for both parties would leave the courtroom during any such presentation. Haskett Decl.,
6  Ex. 4. Again, Motorola did not provide a response. *Id.*

7  Motorola now argues that it fears "unprotected dissemination" of its "highly sensitive
8  confidential information" in "foreign proceedings." Brief at 2. But the foreign proceedings are in
9  Motorola's chosen forum, and Motorola has demonstrated no such concern in the past when
10 submitting confidential information in support of its own case. On this basis, also, Motorola's
11 present motion to quash should be denied.[1]

### IV. MOTOROLA'S ALLEGATIONS THAT IT HAS BEEN UNFAIRLY PREJUDICED BY APPLE'S SECTION 1782 APPLICATION ARE UNFOUNDED

14 Finally, Motorola incorrectly attacks the process invoked by Apple for obtaining the
15 discovery needed to maintain its defenses in the German proceedings. Motorola does not—and
16 cannot—contend that Section 1782 applications may not be brought *ex parte*. Although Motorola
17 cites one district court that declined to consider a Section 1782 application on an *ex parte* basis,
18 even that court merely required that notice be provided to the other parties to the foreign
19 litigation, after which it *granted* the application. *In re Application of Merck & Co.*, 197 F.R.D.
20 267, 271, 275 (M.D.N.C. 2000). Significantly, in this case, Apple provided notice to the only
21 party to the foreign litigation (Motorola) less than 12 hours after its Application was filed and a
22 full week before the Court granted the Application. Haskett Decl., ¶ 4; *id.* Ex. 1. Motorola's
23 argument with the "*ex parte*" nature of the proceeding is therefore groundless.

---

[1] Motorola chose the German court as the forum for its patent infringement claims against Apple, and did so with the knowledge that the Motorola-Qualcomm license would be at issue. Motorola filed the German action on April 26, 2011. Haskett Decl., ¶ 3. As of that date, Apple had already asserted defenses in a separate proceeding, arguing that certain of its products were covered by the Motorola-Qualcomm license. Haskett Decl., ¶ 14. It is unfairly prejudicial to Apple that Motorola is now arguing that Apple may not present its defenses in the forum of Motorola's choice.

1   Moreover, the notice provided by Apple to Motorola of its Section 1782 Application was
2   sent directly to Motorola's counsel in the foreign proceedings.  In both the U.S. litigations and the
3   German litigations between Apple and Motorola, Motorola is represented by Quinn Emanuel
4   Urquhart & Sullivan, and notice of the Section 1782 Application was provided directly to Charles
5   Verhoeven of that firm.  Mr. Verhoeven is in fact Motorola's lead trial counsel in the U.S.
6   proceedings.  Haskett Decl., ¶ 4.  Although it is apparent from Motorola's motion that Mr.
7   Verhoeven failed to notify his client of the filing of the Application, that is not Apple's fault and
8   in any event does not undercut the fact that Apple provided adequate notice.

9   Finally, Motorola's attacks based on the confidential nature of the documents sought must
10  fail for all of the reasons discussed above:  Apple has tried, repeatedly, to convince Motorola to
11  enter into a confidentiality agreement applicable to the German proceedings, to no avail.  Haskett
12  Decl., ¶ 13.  And even now, Apple remains willing to enter into such an agreement that would
13  provide that (1) the parties' in-house counsel and other personnel shall not be permitted access to
14  the documents in question; (2) the parties shall take all reasonable precautions to prevent
15  information submitted to the German courts from being made public, including stipulating and
16  requesting the German courts to close the courtroom during those portions of hearings when
17  confidential information is to be discussed; and (3) particularly sensitive terms, such as royalty
18  rates and specific financial terms may be redacted from the documents.  Haskett Decl., Ex. 3
19  (letter from Christine Haskett to Stephen Swedlow).

20  In light of the history of Apple's attempts to reach agreement with Motorola on a
21  confidentiality agreement, as well as Apple's continued willingness to do so, Motorola has no
22  basis for seeking to quash Apple's subpoena to Qualcomm.[2]  Motorola can have no legitimate

---

[2] The cases cited by Motorola do not suggest that Apple's request for discovery should be denied based on inadequate protection for confidential information in German courts.  In *Minatec Finance S.A.R.L. v. SI Group, Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, *9 (N.D.N.Y. Aug. 18, 2008), the court did not reach the issue at all, as the applicant was amenable to the entry of a protective order.  In *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) and *Cryolife, Inc. v. Tenaxis Medical, Inc.*, No. C08-05124 HRL, 2009 WL 88348, *5 (N.D. Cal. Jan. 13, 2009), the court indicated that a confidentiality agreement between the parties would provide protection against disclosure, but did not consider whether protections equivalent to what Apple has already offered in this case would be insufficient.  And in *Four Pillars Enterprises Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078–79 (9th Cir. 2002), the court imposed limitations on discovery (but did not deny all of the requested discovery) because

1  concern regarding the confidentiality of its information, and this Court should not permit

2  Motorola to stand in the way of legitimate discovery for purely tactical reasons.

3  **V.  CONCLUSIONS**

4  For the foregoing reasons, Motorola's motion to quash should be denied.

Dated:  January 30, 2012

*/s/ Mark D. Selwyn*
Mark D. Selwyn (CA SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

---

of "special circumstances" including a previous criminal conviction of one of the defendants for theft of trade secrets.  The cited cases are inapposite here, where there is no history of theft of confidential information, where the parties have already navigated the use of confidential information in German court, and where Apple has already offered on multiple occasions to enter into an agreement to seek and provide additional protection.

**Certificate of Service**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 30, 2012 on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  A true and correct copy of the above and foregoing document has also been served on Peter E. Perkowski by facsimile.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Dated:  January 30, 2012                               */s/ Mark D. Selwyn*
                                                         Mark D. Selwyn